**No. 23-1841**

In the
United States Court of Appeals
For the Fourth Circuit

―――――――――――――

MARINE CLUB MANAGER, INC.; EBRM RESURRECTION LLC; ERIC
BLUMENFELD,

*Petitioners-Appellants*,

v.

RB COMMERCIAL MORTGAGE, LLC,

*Respondent-Appellee*.

―――――――――――――

On Appeal from the United States District Court
for the Western District of North Carolina at Asheville
Case No. 3:22-cv-00609-MOC-DCK
Honorable Max O. Cogburn, Jr.

―――――――――――――

**BRIEF OF RESPONDENT-APPELLEE**

―――――――――――

Gerald J. Stubenhofer, Jr.
Cameron J. Comer
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
T: (412) 667-6000
F: (412) 667-6050
gstubenhofer@mcguirewoods.com
ccomer@mcguirewoods.com

*Counsel for Respondent-Appellee*

October 23, 2023

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Respondent-Appellee RB Commercial makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?
Answer: No

2. Does party/amicus have any parent corporations? If yes, identify all parent corporations, including all generations of parent corporations:
Answer: Yes – New York Mortgage Trust, Inc.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? If yes, identify all such owners:
Answer: Yes – New York Mortgage Trust, Inc.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?
Answer: No

5. Is party a trade association?
Answer: No

6. Does this case arise out of a bankruptcy proceeding?
Answer: No


Dated: October 23, 2023                    */s/ Gerald J. Stubenhofer, Jr.*
                                           Gerald J. Stubenhofer, Jr.
                                           *Counsel for Respondent-Appellee RB*
                                           *Commercial Mortgage, LLC*

# TABLE OF CONTENTS

<strong>Page</strong>

INTRODUCTION ..................................................................................1

ISSUES PRESENTED...........................................................................3

STATEMENT OF THE CASE................................................................3

    I.      The Underlying Dispute. ........................................................3

    II.     The Initial Arbitration. ..........................................................5

    III.    Arbitral Appellate Review of the Award. ...............................8

    IV.    The District Court's Review of the Award. ............................9

SUMMARY OF ARGUMENT ..............................................................10

ARGUMENT ........................................................................................12

    I.      Standard of Review. .............................................................12

    II.     The Arbitrator Did Not Exceed Her Authority By Adjudicating An Issue After the Hearing at Petitioners' Request. ...........................13

    III.    The Arbitrator Did Not Manifestly Disregard the Law In Reaching the Final Award...............................................16

          A.    The Arbitrator's Conclusion That Mr. Blumenfeld Cannot Presently Redeem RB Commercial Did Not Manifestly Disregard The Law. ..................................18

               1.    Petitioners Did Not Identify Binding Authority Requiring A Contrary Result. .......................................18

               2.    The Arbitrator Followed All Applicable Legal Principles in Reaching Her Award. ...............................21

          B.    The Arbitrator's Conclusion that RB Commercial Could Recover Attorneys' Fees Was Not In Manifest Disregard of The Law. ..............................................................24

          C.    The Arbitrator's Conclusion that Full Recourse Events Had Occurred Was Not In Manifest Disregard of Delaware Law. .......................................................28

          D.    The Arbitrator's Conclusion that Changeover Events Had Occurred Was Not In Manifest Disregard of Delaware Law........................................................32

**E.**     The Arbitrator's Rejection of Petitioners' Counterclaims
          Was Not In Manifest Disregard of the Law.............................36

**F.**     Even If The Arbitrator Manifestly Disregarded The Law,
          That Is Not A Ground For Vacatur Under 9 U.S.C. § 10.........39

IV.    Petitioners Appeal is Frivolous and RB Commercial Should Be
       Awarded Its Attorneys' Fees For Defending Against It. ..................42

V.     Oral Argument is Not Needed in This Case.......................................45

CONCLUSION ........................................................................................45

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*,
  660 F.3d 281 (7th Cir. 2011) ................................................................ 41

*Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*,
  142 F.3d 188 (4th Cir. 1998) ........................................................ 12, 19

*B.L. Harbert Int'l, LLC v. Hercules Steel Co.*,
  441 F.3d 905 (11th Cir. 2006) .......................................................... 43

*Beckley Oncology Assocs., Inc. v. Abumasmah*,
  993 F.3d 261 (4th Cir. 2021) ............................................................ 12

*Constellium Rolled Prod. Ravenswood, LLC v. United Steel, Paper & Forestry,
Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO/CLC*,
  18 F.4th 736 (4th Cir. 2021) ........................................... 16-17, 20, 41

*Cranston Print Works Co. v. Pub. Serv. Co. of N.C.*,
  291 F.2d 638 (4th Cir. 1961) ............................................................ 14

*DCV Hldgs., Inc. v. ConAgra, Inc.*,
  889 A.2d 954 (Del. 2005) ................................................................ 19

*DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*,
  585 F.3d 1341 (10th Cir. 2009) ........................................................ 42

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003) ............................................................ 22

*E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*,
  531 U.S. 57 (2000) .......................................................................... 10

*FAA. Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008) ........................................................ 13, 40, 41

i

*Fitch v. Pub. Util. Comm'n of Tex.*,
    261 F. App'x 788 (5th Cir. 2008) ....................................... 15

*Frye v. Wild Bird Centers of Am., Inc.*,
    714 F. App'x 211 (4th Cir. 2017) ...................................... 19

*Hardy v. Walsh Manning Sec., L.L.C.*,
    341 F.3d 126 (2d Cir. 2003) ............................................ 17

*Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*,
    880 F.3d 335 (7th Cir. 2018) ........................................... 43

*Interactive Brokers LLC v. Saroop*,
    969 F.3d 438 (4th Cir. 2020) ........................................... 13

*Johnson Controls, Inc. v. Edman Controls, Inc.*,
    712 F.3d 1021 (7th Cir. 2013) .......................................... 42

*Johnson v. Home State Bank*,
    501 U.S. 78 (1991) ...................................................... 22

*Johnson v. Wells Fargo Home Mortgage, Inc.*,
    635 F.3d 401 (9th Cir. 2011) ........................................... 41

*BLFG Holding, LLC v. ENXCO LFG Holdings, LLC*,
    41 A.3d 410 (Del. 2012) ................................................ 19

*Long John Silver's Restaurants, Inc. v. Cole*,
    514 F.3d 345 (4th Cir. 2008) ........................................... 17

*Lynch v. Whitney*,
    419 F. App'x 826 (10th Cir. 2011) ..................................... 42

*Mahani v. Edix Media Gp., Inc.*,
    935 A.2d 242 (Del. 2007) ............................................... 25

*MCI Constructors, LLC v. City Of Greensboro*,
    610 F.3d 849 (4th Cir. 2010) ....................................... 22, 26

*OSI Sys., Inc. v. Instrumentarium Corp.*,
    892 A.2d 1086 (Del Ch. Ct. 2006) .................................................. 16

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013) ............................................................... 20, 45

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*,
    991 F.2d 141 (4th Cir. 1993) ............................................................ 15

*Petitioners. Enmon v. Prospect Cap. Corp.*,
    675 F.3d 138 (2d Cir. 2012) ............................................................ 43

*Raymond James Fin. Servs., Inc. v. Bishop*,
    596 F.3d 183 (4th Cir. 2010) ............................................................ 17

*Robelen Piano Co. v. Di Fonzo*,
    53 Del. 346, 169 A.2d 240 (1961) .................................................. 14

*Rostad & Rostad Corp. v. Inv. Mgmt. & Rsch., Inc.*,
    923 F.2d 694 (9th Cir. 1991) ............................................................ 43

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) .................................................................... 12

*Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*,
    492 F.3d 520 (4th Cir. 2007) ............................................................ 13

*United Food & Com. Workers, Loc. 400 v. Marval Poultry Co.*,
    876 F.2d 346 (4th Cir. 1989) ................................................ 29-30, 37

*United States v. Bennafield*,
    287 F.3d 320 (4th Cir. 2002) ............................................................ 15

*United States v. Herrera*,
    23 F.3d 74 (4th Cir. 1994) ............................................................ 14-15

*United States v. Lespier*,
    725 F.3d 437 (4th Cir. 2013) ............................................................ 15

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
    363 U.S. 593 (1960) .................................................................... 18

iii

*Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*,
   933 F.2d 225 (4th Cir. 1991) ............................................................ 34

*Jones v. Dancel*,
   792 F.3d 395 (4th Cir. 2015) ............................................................ 16

*Wachovia Sec., LLC v. Brand*,
   671 F.3d 472 (4th Cir. 2012) ........................................ 16, 39, 40, 41

*Warfield v. Icon Advisers, Inc*,
   26 F.4th 666 (4th Cir. 2022) ........................ 12, 13, 15, 18, 24, 28, 41

*Wells Fargo Advisors, LLC v. Watts*,
   540 F. App'x 229 (4th Cir. 2013) ................................................ 25, 26

**Statutes**

9 U.S.C. § 9 ................................................................................ 12, 40
9 U.S.C. § 10 ........................................................................ 13, 39, 40
9 U.S.C. § 11 .................................................................................... 40
28 U.S.C. § 1912 ............................................................................. 42
28 U.S.C. § 1927 ............................................................................. 42

**Rules**

Fed. R. App. P. 32 .......................................................................... 47
Fed. R. App. P. 39 .......................................................................... 42
American Arbitration Association Commercial Rules of Arbitration Rule 49 ..... 27

**INTRODUCTION**

Petitioners Eric Blumenfeld, Marine Club Manager, Inc., and EBRM Resurrection, LLC bargained for an arbitrator—not a court—to resolve any disputes between them and Respondent RB Commercial Mortgage LLC concerning the Operating Agreement governing Marine Club Associates, LLC ("Marine Club"), the company that the parties' jointly own. When such a dispute arose, the Arbitrator agreed with RB Commercial's interpretation of several contract provisions, rejected Petitioners' defenses and counterclaims, and awarded RB Commercial its reasonable attorneys' fees. When Petitioners appealed the Arbitrator's decision to a panel of three additional arbitrators, those arbitrators unanimously ruled for RB Commercial as well. As did the United States District Court for the Western District of North Carolina, which confirmed the Arbitrator's award.

Petitioners now claim that four separate arbitrators—three of whom are former judges—and a sitting district court judge all got it wrong. For six different reasons, they ask this Court not only to unwind those reasoned adjudications, but to nullify the arbitration process that the parties spelled out in the Operating Agreement. Yet each of Petitioners' bases for appeal is frivolous and made in bad faith.

The most egregious is their argument that the Arbitrator exceeded her authority by deciding an issue first raised after the evidentiary hearing. Petitioners

never mention that they invited this purported error by asking the Arbitrator to decide the very issue they now claim she should not have adjudicated. Instead, they falsely claim that the Arbitrator considered the issue at RB Commercial's request. This sanctionable misrepresentation of the record betrays Petitioners' arguments' complete lack of merit.

Petitioners further argue that the Arbitrator manifestly disregarded Delaware law on five separate issues, which together constitute the entirety of her award. But Petitioners are wrong about all five. Far from disregarding binding case law, the Arbitrator respected all applicable precedent and dispassionately interpreted the parties' contract.

In short, Petitioners' third attempt to revisit the Arbitrator's award contravenes the Federal Arbitration Act's primary purpose: to favor the speedy and inexpensive adjudication of disputes. The parties to the Operating Agreement agreed to an arbitration provision to avoid the lengthy trial and appellate litigation in which the parties now find themselves. The Court should not permit Petitioners to continue flouting the Operating Agreement's arbitration provision simply because the Arbitrator interpreted the contract in a manner with which they disagree. The Court should affirm the district court's order confirming the Arbitrator's award and denying Petitioners' meritless petition to vacate, modify, or correct the award.

## ISSUES PRESENTED

1. After Petitioners requested that the Arbitrator decide whether Petitioners could redeem RB Commercial's ownership interest in Marine Club, the Arbitrator ruled that they could not. The district court affirmed that award and ruled that the Arbitrator acted within her authority. Did the district court err?

2. Petitioners moved to vacate the Arbitrator's award, arguing that the Arbitrator manifestly disregarded the law. Because Petitioners failed to identify any binding precedent that the Arbitrator refused to apply, the district court denied Petitioners' motion. Did the district court err?

## STATEMENT OF THE CASE

### I.    The Underlying Dispute.

RB Commercial is the multifamily property investment arm and wholly owned subsidiary of New York Mortgage Trust, Inc., a publicly traded REIT. JA908. Eric Blumenfeld is a Philadelphia real estate developer. JA908. Marine Club Manager, Inc. is a company wholly owned and controlled by Mr. Blumenfeld. JA908. In November 2014, RB Commercial, Mr. Blumenfeld, and Marine Club Manager, Inc. formed Marine Club. JA907-908; *see also* JA2271. Marine Club's purpose was to own and operate an apartment complex in Philadelphia, Pennsylvania (the "Property"). JA907; *see also* JA2271. As part of Marine Club's formation, RB Commercial, Mr. Blumenfeld, and Marine Club Manager, Inc., executed the Limited Liability Company Agreement of Marine Club Associates, LLC (the "Operating

3

Agreement"). JA907-908; *see also* JA024. Among other things, the Operating Agreement defined certain violations as "Changeover Events," or "Full Recourse Events," and identified the consequences of each of those events. *See* JA868; JA877 Also in November 2014, Marine Club entered into a Loan Agreement with Cantor Commercial Real Estate Lending ("Senior Lender"). JA908; s*ee also* JA093. The Senior Lender in turn entered into a Recognition Agreement with RB Commercial. JA013; *see also* JA236.

In 2018, Petitioners began breaching the Operating Agreement. JA1033. Their many breaches included:

- Refusing to make required monthly payments to RB Commercial; JA1033-1034;

- Failing to ensure the Property's manager escrowed security deposits pursuant to its contractual obligations; JA1036-1037;

- Failing to pay the Senior Lender, resulting in the Property being placed into foreclosure; JA1035;

- Intentionally diverting funds produced by the Property away from the contractually required accounts; JA1036;

- Interfering with RB Commercial's attempts to exercise its remedies for a Changeover Event; JA1040; and,

- Taking RB Commercial's signature, attaching it to a document RB Commercial had never seen, and then presenting it to a lender as a true and correct copy of RB Commercial's consent. JA1038-1039.

These actions constituted Changeover Events and Full Recourse Events under sections 8.1 and 13.2 of the Operating Agreement. *See* JA057 (section 8.1); JA066-067 (section 13.2).

## II.    The Initial Arbitration.

On November 17, 2020, RB Commercial initiated an arbitration proceeding in the American Arbitration Association ("AAA") seeking redress for these violations. *See* JA265. RB Commercial sought to arbitrate its claims because, in the Operating Agreement, Marine Club's members agreed that all disputes, controversies, and claims arising or relating to the Operating Agreement were subject to "binding arbitration administered by the AAA in accordance with its Commercial Arbitration Rules." JA071. RB Commercial requested declaratory judgments that Changeover Events and Full Recourse Events had occurred. *See* JA745. Petitioners responded with counterclaims alleging RB Commercial materially breached the Operating Agreement. JA1477. The AAA appointed Barbara B. Weyher as the arbitrator (the "Arbitrator") to adjudicate these claims. JA2275; *see also* JA1070.

Following extensive discovery, the Arbitrator held an evidentiary hearing across three days in May and June 2022 in Charlotte, North Carolina. JA2275.[1] At the hearing, both parties presented evidence and cross-examined witnesses, and over 4,000 pages of evidence was admitted and considered. JA1029. The Arbitrator excluded no evidence at the hearing. JA1029.

On August 9, 2022, following multiple rounds of post-hearing briefing, the Arbitrator entered the Partial Award. *See* JA1288. The Arbitrator held that RB Commercial was entitled to a declaratory judgment that Changeover Events have occurred; that RB Commercial was entitled to a declaratory judgment that Full Recourse Events have occurred; and that Petitioners did not prove any of their counterclaims. *See* JA1312. She also determined that RB Commercial was the prevailing party and requested briefing on the issue of awarding attorneys' fees. JA1312.

After receiving the Partial Award, Petitioners attempted to redeem RB Commercial's equity in Marine Club under section 13.2 of the Operating Agreement and thereby extinguish its ownership interest in Marine Club. JA1987. RB Commercial could not accept the buy-out because other provisions of the Operating Agreement precluded Petitioners' actions. On September 6, 2022, after RB

---

[1] The hearing was first scheduled for November 9, 2021. JA1276. But it was postponed three times, twice over RB Commercial's opposition. JA1145.

Commercial did not accept the redemption, Petitioners sent the Arbitrator an "emergency request/motion for clarification of the Arbitrator's Partial Award." JA1513. They asked the Arbitrator to "immediately clarify whether the Arbitrator has concluded that Mr. Blumenfeld can pay and redeem Claimant pursuant to Section 13.2 of the Operating Agreement or whether she had concluded that he is not permitted to do so under Sections 12.2 and/or 12.2 of the Operating Agreement…. or otherwise." JA1514. After receiving RB Commercial's response to the motion, the Arbitrator clarified her award as requested by Petitioners. JA1509. She noted that "while Blumenfeld clearly owes the Required Redemption Amount, it is equally clear from multiple provisions in the Operating Agreement that redemption of [RB Commercial] may not occur until the Senior Mortgage Loan is paid," which had not yet occurred. JA1510.

Finally, on September 26, 2022, the Arbitrator issued her final arbitration award (the "Final Award"). *See* JA1028. This award adopted the Partial Award, included a paragraph clarifying that Petitioners could not redeem RB Commercial's interest in Marine Club, and further determined that Petitioners owed RB Commercial $1,795,846.02 in reasonable attorney's fees. JA1053-1054.[2]

---

[2] The determination of attorneys' fees was made following briefing from both parties as to the entitlement to and reasonableness of the fees requested. See JA1531; JA1553. In her final award, the Arbitrator reduced RB Commercial's fee request by $148,360.95. JA1121.

### III.    Arbitral Appellate Review of the Award.

Under the Operating Agreement, Petitioners, having lost the arbitration, had the right to seek appellate review of the Final Award "before an arbitration review panel" (the "Appellate Arbitration Panel"). JA072. This Appellate Arbitration Panel was "entitled to review all findings of fact and conclusions of law [of the Arbitrator] in whatever manner it deem[ed] appropriate." JA072. Petitioners requested this review on September 30, 2022. JA1319. After receiving input from the parties, the AAA appointed Hon. E. Leo Milonas, a former justice on the Appellate Division of the New York Supreme Court; Hon. Robert N. Hunter Jr. a former justice on the Supreme Court of North Carolina, and Hon. Frank W. Bullock Jr., a former judge on the U.S. District Court for the Middle District of North Carolina who regularly sat by designation as a judge on this Court, as the arbitrators comprising the Appellate Arbitration Panel. JA1324.

In their briefing to the Appellate Arbitration Panel, Petitioners claimed that the Arbitrator erred by concluding that: "(1) that Mr. Blumenfeld cannot now redeem [RB Commercial's] preferred equity interest in the Company, (2) that Changeover Events have occurred, (3) that Full Recourse Events have occurred, (4) that attorney's fees be awarded to [RB Commercial], (5) imposing the default interest rate despite no Changeover Event having occurred, and (6) that RB Commercial's actions . . . did not constitute material breaches of the Operating Agreement."

JA1988-2010. RB Commercial requested that the Appellate Arbitration Panel affirm the Final Award in its entirety. JA2015. Both parties agreed that the AAA Optional Appellate Arbitration Rules would apply to the review, and that the Appellate Arbitration Panel could overturn any material and prejudicial error of law, or any clearly erroneous finding of fact. JA1117.

On January 17, 2023, after consideration of Petitioners' various claims of error, the briefs submitted by the Parties, and the voluminous reproduced record, the Appellate Arbitration Panel issued its award (the "Appeal Award"). *See* JA1117. The Panel rejected all of Petitioners' allegations of error and "affirm[ed] and adopt[ed] the Arbitrator's Findings and Conclusions." JA1119-1121.

On April 4, 2023, the Appellate Arbitration Panel issued a second arbitration award, declaring that RB Commercial was entitled to recover $75,000 in attorneys' fees and costs incurred as part of the Appellate Arbitration Panel's review of the Final Award. JA1679-1681; *see also* JA1795.[3]

## IV.    The District Court's Review of the Award.

On November 7, 2022, while the arbitration was pending before the Appellate Arbitration Panel, Petitioners filed a Petition to Vacate, Modify, or Correct

---

[3] None of Petitioners arguments in this Court apply to the second arbitration award entered on April 4, 2023, awarding RB Commercial with its attorneys' fees for litigating the review by the arbitration appeal panel. JA2277-2278. Instead, Petitioners argue only that the district court erred in confirming the January 17, 2023, award. *See* JA2284-2286; *see also* JA1604.

Arbitration Award. *See* JA009. It asserted eight independent grounds for vacatur but did not include a single citation to any supporting authority. *See* JA009-022. After the Appellate Arbitration Panel issued its Appeal Award, RB Commercial moved to confirm the award. JA829.

On September 25, 2023, the district court confirmed the Final Award. *See* JA2270. The district court rejected all eight of Petitioners' grounds for vacatur, including the argument that "the Arbitrator failed to follow binding Delaware law in construing and interpreting the plain language of the Operating Agreement." JA2284. The district court found that "the Arbitrator's award drew 'its essence from the contract' rather than 'simply reflect[ing] [their] own notions of [economic] justice." JA2284 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).

Petitioners appeal from the district court's order granting RB Commercial's motion to confirm the Final Award and from the district court's order denying Petitioners' petition to vacate, correct or modify that same award.

## <u>SUMMARY OF ARGUMENT</u>

The Court should affirm the district court's orders granting RB Commercial's motion to confirm and denying Petitioners' petition to vacate, correct or modify the Final Award. Vacating an arbitration award is an unusual

and extraordinary step. Indeed, arbitration awards must be confirmed even when an arbitrator wrongly interpreted the law or misapplied the facts.

Petitioners' six arguments for vacating the Final Award fall into two broad categories: (1) that the Arbitrator exceeded her authority and (2) that she issued the Final Award in manifest disregard of the law.

Petitioners argue that the Arbitrator exceeded her authority when she ruled that Petitioners could not redeem RB Commercial at the time of her ruling because of the unpaid Senior Loan. That contention blatantly misrepresents the record. Contrary to Petitioners' argument, it was *Petitioners*, not RB Commercial, who raised this issue by asking the Arbitrator to clarify her earlier ruling. The doctrine of invited error precludes Petitioners from claiming that the arbitrator erred by doing exactly what they requested she do. Regardless, the Arbitrator's ruling fell well within her authority.

Petitioners then allege that the arbitrator manifestly disregarded the law when reaching every one of her remaining conclusions. To show that an arbitrator manifestly disregarded the law, one must identify binding precedent that, if followed, would compel a contrary result. But Petitioners identify no binding precedent that the Arbitrator ignored. They instead repeatedly assert that she disregarded the general rule of construction that contracts be interpreted to give meaning to their plain terms. By agreeing to arbitration, however, the parties

11

agreed to accept the Arbitrator's interpretation of the Operating Agreement. This Court cannot allow Petitioners to relitigate the dispute on appeal merely because they disagree with the Arbitrator's interpretation.

## ARGUMENT

## I.      Standard of Review.

The scope of judicial review of arbitration awards is "among the narrowest known at law." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). The Court "is not to determine the merits of the dispute between the parties but rather to determine only whether the Arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Beckley Oncology Assocs., Inc. v. Abumasmah*, 993 F.3d 261, 266 (4th Cir. 2021).

The Federal Arbitration Act requires confirmation of arbitration awards unless the award is vacated or modified. 9 U.S.C. § 9. But convincing this Court "to vacate an arbitral award is a herculean task." *Warfield v. Icon Advisers, Inc*, 26 F.4th 666, 669 (4th Cir. 2022). It is not enough for petitioners to show that the Arbitrator "committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 671 (2010). "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 193-94. "A more searching review would 'render informal arbitration merely a prelude to a more cumbersome and time-

consuming judicial review process' and bring arbitration theory to grief." *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Relevant here, the Court may overturn an arbitral award only when the arbitrator exceeded her authority, 9 U.S.C. § 10(a)(4), or displayed a "manifest disregard of the law," *Warfield*, 26 F.4th 669 (internal quotations omitted).

The Court reviews the district court's legal rulings, *de novo. Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). "Any factual findings made by the district court in affirming [an arbitration] award are reviewed for clear error." *Id.* (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993).

## II.    The Arbitrator Did Not Exceed Her Authority By Adjudicating An Issue After the Hearing at Petitioners' Request.

As noted, Petitioners argue that the Arbitrator exceeded her authority under the Operating Agreement when, after the hearing, she adjudicated the question of whether Mr. Blumenfeld (or Petitioners) could redeem RB Commercial under Section 13.2 of the Operating Agreement.[4] Appellants' Br. p. 26. In making this

---

[4] Petitioners do not specify which provision of the FAA allows vacatur of the award based on this allegation. RB Commercial has analyzed it as one exceeding authority under 9 U.S.C. §10(a)(4). But even if Petitioners seek to proceed under (a)(3), their claim also fails because the arbitrator did not commit misconduct or misbehavior in answering a question posed by Petitioners after the hearing. Petitioners submitted a motion, citing case law which they believe authorized the clarification after the

argument, Petitioners grossly misstate the factual record and claim that RB Commercial asked the Arbitrator to issue this ruling. This assertion is remarkable and demonstrably false.

After receiving the Partial Award, Petitioners filed an "emergency request/motion for clarification[.]" JA1513. It was this "request for clarification" which the Arbitrator answered *over RB Commercial's opposition.* JA1509. In that request, Petitioners asked the Arbitrator to "immediately clarify" the exact question that they now claim the Arbitrator erred by deciding. JA1514.

The motivation for this misrepresentation is transparent: the invited error doctrine forecloses Petitioners' argument, if based on the true facts. *See Cranston Print Works Co. v. Pub. Serv. Co. of N.C.*, 291 F.2d 638, 649 (4th Cir. 1961).[5] This doctrine embodies the fundamental principle that "'a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir.

---

hearing. Petitioners never requested an opportunity to make oral arguments or submit evidence. Nor would such evidence be required, because the issue which Petitioners wished the arbitrator to resolve is one of contractual interpretation, which the Arbitrator acknowledged was an issue of law for which factual evidence was not needed. *See* JA1043.

[5] Fourth Circuit law supplies the invited error doctrine, but the Delaware law governing the arbitration remains the same. *See Robelen Piano Co. v. Di Fonzo,* 53 Del. 346, 361, 169 A.2d 240, 247 (1961)("[T]he difficulty with Robelen's argument is that the charge was given as a result of its specific prayer to the court. Accordingly, Robelen is in no position to urge this as error.").

1994) (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)). This Court has consistently refused to review invited error, even in the criminal context. *United States v. Bennafield*, 287 F.3d 320, 325 (4th Cir. 2002). Allowing a party to request a ruling in a lower tribunal and then challenge the ability of the tribunal to make the ruling requested would destroy certainty in the arbitration process. *See United States v. Lespier*, 725 F.3d 437, 449-50 (4th Cir. 2013) ("[R]ecognizing an invited error would seriously undermine confidence in the integrity of the courts").[6] Petitioners requested that the Arbitrator clarify her award, they cannot now complain that the Arbitrator accommodated that request.

Even setting the invited error doctrine aside, however, the Arbitrator's ruling fell within her authority. When courts evaluate whether an arbitrator has exceeded her authority, they must resolve "any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority . . . in favor of the arbitrators' authority as a matter of federal law and policy." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141, 147 (4th Cir. 1993)). The Arbitrator's ruling on this issue undoubtedly arose from the parties' contract—it interpreted three relevant provisions of that contract. It was also

---

[6] There are no reasons why this doctrine should not apply to arbitration proceedings, as the same concerns about invited error in lower courts applies to review of decisions arising from arbitration proceedings. *See Fitch v. Pub. Util. Comm'n of Tex.*, 261 F. App'x 788, 794 (5th Cir. 2008) (holding an arbitrator's ruling was not subject to judicial review because it resulted from invited error).

issued after the Arbitrator received letters from both parties on this issue.[7] Therefore, no claim can be made that the Operating Agreement did not grant the Arbitrator the authority to decide this issue. *Jones v. Dancel*, 792 F.3d 395, 405 (4th Cir. 2015) ("Here, the plaintiffs do not argue that the Arbitrator failed to observe any limitations on his authority imposed by the relevant arbitration provisions in the parties' contracts.").

## III.   The Arbitrator Did Not Manifestly Disregard the Law In Reaching the Final Award.

Petitioners identify five specific instances of the Arbitrator's alleged manifest disregard of the law. To succeed on such a claim, Petitioners must show that "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the Arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015)."[P]roving manifest disregard require[s] something beyond showing that the arbitrators misconstrued the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012). "A confusing, ambiguous, or even incorrect application of the law is not manifest disregard." *Constellium Rolled Prod. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied*

---

[7] To the extent that Petitioners claim discovery on the issue is needed, it undercuts their assertion that the contract is unambiguous, and the arbitrator violated its plain meaning. The interpretation of unambiguous contract provisions is a question of law that requires no discovery. *See* JA1043 (quoting *OSI Sys., Inc. v. Instrumentarium Corp.,* 892 A.2d 1086, 1090 (Del Ch. Ct. 2006)).

*Indus. & Serv. Workers Int'l Union AFL-CIO/CLC*, 18 F.4th 736, 743 (4th Cir. 2021). Instead, to vacate the Final Award, Petitioners must show "that the Arbitrator, in making [her] ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [her], and yet chose to ignore it in propounding [her] decision.'" *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994)). None of the instances identified by Petitioners meet this test.[8]

RB Commercial addresses each of Petitioners' claims of manifest disregard below. Collectively reviewing the five grounds for vacatur, however, which together challenge every one of the Arbitrator's substantive findings, showcases what Petitioners believe the manifest disregard standard provides: an opportunity to air anew their arguments about the proper interpretation of the Operating Agreement. *But see Constellium Rolled Prod. Ravenswood*, 18 F.4th at 741 ("Manifest disregard 'is not an invitation to review the merits of the underlying arbitration.'" (quoting *Wachovia Secs*, 671 F.3d at 483).

---

[8] Even if Petitioners are correct, and the award should be vacated, the appropriate remedy is to remand to the arbitrator so she can clarify or modify her award as needed. *See e.g.*, *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 191 (4th Cir. 2010); *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 134 (2d Cir. 2003) (granting remand to clarify "whether an arbitration panel's intent in making an award 'evidence[s] a manifest disregard of the law'") (alterations in original).

These arguments have already been heard and rejected. First by the Arbitrator. Second by an Appellate Arbitration Panel, utilizing a much lower standard of review than that imposed by the Federal Arbitration Act ("FAA"). Finally, by the district court. Petitioners would have this Court believe that four experienced jurists have all disregarded binding legal authority and instead implemented their "own brand of industrial justice[]" in reaching this result. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). This assertion is not only improbable but also patently absurd.

### A. The Arbitrator's Conclusion That Mr. Blumenfeld Cannot Presently Redeem RB Commercial Did Not Manifestly Disregard The Law.

Petitioners' first claim that the Arbitrator manifestly disregarded the law when she found that Mr. Blumenfeld cannot complete the redemption of RB Commercial without first paying the Senior Lender. Even if Petitioners were correct that the Arbitrator misinterpreted the contract, binding case law precludes this Court from disturbing her award. But this Court need not concern itself with that scenario because Petitioners are not correct; the Arbitrator's award is well-supported and well-reasoned. It respected the law that guided it.

### 1. Petitioners Did Not Identify Binding Authority Requiring A Contrary Result.

The first prong of manifest disregard requires Petitioners to identify "binding precedent requiring a contrary result." *Warfield*, 26 F.4th at 670 (quoting *Jones v.*

*Dancel*, 792 F.3d 395, 403 (4th Cir. 2015)). Petitioners fail to cite to any binding precedents containing a specific legal principle that would have required a contrary result.

Petitioners cited to the Arbitrator *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012) (for the proposition that an unambiguous contract is construed in accordance with its plain language) and *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (for the proposition that specific language controls over general language in a contract). *See* JA683-731. These cases were cited for broad principles of contractual interpretation. This Court has noted, however, that "neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." *Apex Plumbing,* 142 F.3d at 194 (refusing to vacate an arbitration award despite an arbitrator's "irrational[] disregard[ of] an unambiguous provision of the Agreement"). Allowing vacatur for the alleged disregard of such broad legal principles would improperly subject an award's merits to searching judicial review. *See Frye v. Wild Bird Centers of Am., Inc.*, 714 F. App'x 211, 213 (4th Cir. 2017) (rejecting appellant's arguments because their "claims do not extend beyond alleging that the Arbitrator misinterpreted the agreement."). Such broad review would frustrate arbitration's purpose: the "quick resolution of disputes

and the avoidance of the expense and delay associated with litigation." *Apex Plumbing*, 142 F.3d at 193.

The Supreme Court has unanimously refused to vacate an award simply because an arbitrator incorrectly interpreted the terms of a contract. In *Oxford Health Plans LLC v. Sutter*, the Supreme Court confronted a party's claim that an award should be vacated because the Arbitrator's interpretation of the parties' agreement did not comply with the contract's terms. 569 U.S. 564, 573 (2013). The Court noted that arguments "address[ing] merely the merits…. [are] not properly addressed to a court." *Id.* at 572. This is because an arbitration clause reflects both parties' intent that an arbitrator construe the contract, "and so far as the Arbitrator's decision concerns construction of the contract, the courts have no business overruling him[.]" *Id.* at 573.

In the instant case, the Arbitrator "provided an interpretation of the contract resolving that disputed issue." *Id.* at 573. Therefore, Petitioners do "not get to rerun the matter in a court" because the "interpretation went against [them], maybe mistakenly so." *Id.* Petitioners' broad claim—that the merits can be relitigated and the award vacated because the Arbitrator interpreted a contract differently than Petitioners—is foreclosed by this binding precedent. *See also Constellium Rolled Prod. Ravenswood,* 18 F.4th at 743 (refusing to vacate an award despite a parties'

20

claim that "the Arbitrator exceeded his authority by returning an award contrary to the contractual language.").

> **2.** <u>The Arbitrator Followed All Applicable Legal Principles in Reaching Her Award.</u>

Even if the Court reaches the merits of Petitioners' argument, it still should not vacate the Final Award because Petitioners cannot show that the Arbitrator disregarded any applicable legal principle. The sole legal principal Petitioners point to is that a contract's unambiguous terms are construed in accordance with their plain meaning. But the Arbitrator's Final Award respected the plain meaning of the Operating Agreement. On this issue in particular, the Arbitrator examined the parties' contract and concluded that "[t]he parties' well-defined intent, which is repeated in three separate sections of the Operating Agreement, was that there could be no redemption of Claimant until the Senior Mortgage is paid." JA1511.

Petitioners essentially argue about the meaning of the language in section 13.2 that following a Full Recourse Event "[RB Commercial's] Investment shall thereupon be redeemed." JA066. Petitioners maintain that this can mean <u>only</u> that, upon the occurrence of a Full Recourse Event, RB Commercial will be automatically and without further action, redeemed of ownership in Marine Club. But the Arbitrator examined the agreement, and determined that the parties intended a different meaning. She held that Section 13.2 meant that following a Full Recourse Event the parties had to immediately take steps, that did not occur automatically,

(identified elsewhere in the agreement, including sections 7.2 and 12.2) to complete the redemption of RB Commercial. JA1510. These steps included, under these circumstances, fully satisfying the Senior Loan. This is a reasonable interpretation of the contract's language and does not contradict any term's plain meaning. *See MCI Constructors, LLC v. City Of Greensboro*, 610 F.3d 849, 861 (4th Cir. 2010) (declining to vacate an award when the contract did "not require an opposite result from that reached by the arbitration panel"); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 391 (2d Cir. 2003) (rejecting manifest disregard challenges where "even a 'barely colorable' justification for the outcome" exists).

Petitioners' particular arguments about the interpretations of the three specific sections examined by the Arbitrator similarly do not withstand scrutiny. Petitioners acknowledge that payments under section 13.2 are limited to when the Senior Lender has "no outstanding claims against [Mr. Blumenfeld]." Appellants' Br. p. 23. So they seek to avoid that limitation by confining *claims* to mean only *pending lawsuits*. Appellants' Br. p. 25. But if the parties, both sophisticated entities, had intended "pending lawsuits," they could easily have stated as much. Instead, they chose the broader word "claim." Case law offers many examples of "claim" not being limited in this fashion. *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (holding a claim in bankruptcy is broadly defined and includes the right to repayment

of a debt). The Arbitrator reasonably interpreted the Operating Agreement when she concluded that the Senior Lender had a claim against Mr. Blumenfeld, even if there is no pending lawsuit.

Petitioners also seek to undermine the Arbitrator's interpretation of section 13.2 in conjunction with sections 12.2 and 7.2. They claim that a redemption under section 13.2 "is separate, distinct, and operates independently" from a redemption under these sections. Appellants' Br. p. 25. Yet the Operating Agreement lacks any language compelling this conclusion.[9] Petitioners claim that interpreting sections 7.2 and 12.2 to apply to a section 13.2 redemption would render section 13.2 superfluous. Appellants' Br. p. 25. But there is nothing superfluous about section 13.2 operating to make a different entity liable for a debt, even if that debt cannot be repaid at the current time. Making Mr. Blumenfeld personally liable reduces the risk

---

[9] Even if Petitioners are correct, they would not be entitled to their asserted relief. The contractual language detailing what occurs after a redemption is found in section 12.2. "Following such redemption, the Capital Member shall have no further rights, obligations or duties pursuant to this Agreement or otherwise with respect to the Company." JA1243. If, as Petitioners' claim, the redemption found in section 12.2 is inapplicable to 13.2, then Petitioners cannot rely on the word "redeemed" in 13.2 to mean that RB Commercial is stripped of its rights and equity in Marine Club, as that conclusion is found in 12.2 and limited to "such redemption." Instead, RB Commercial would remain a member in Marine Club and would have standing to bring its claims against Petitioners.

that there will be insufficient assets to pay both RB Commercial and the Senior Lender.[10]

The Court should not vacate the award because the Arbitrator interpreted the Operating Agreement differently than Petitioners. While nothing in her decision violated the Operating Agreement's plain meaning, on a more fundamental level Petitioners do not get to relitigate the merits of the Arbitrator's interpretation in this Court. As this Court has put it previously:

> In this case, as in almost all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end of our analysis. [There is no] 'binding precedent requiring a contrary result' from the outcome that the arbitrators reached. And even if there were such a binding precedent, [the party seeking vacatur] has not met its heavy burden of showing that the arbitrators knew of and 'refused to heed' that precedent.

*Warfield*, 26 F.4th at 674.

### B.    The Arbitrator's Conclusion that RB Commercial Could Recover Attorneys' Fees Was Not In Manifest Disregard of The Law.

Petitioners next attack the Arbitrator's award of attorneys' fees to RB Commercial. After seeing firsthand the Petitioners' vexatious and dilatory litigation strategy the Arbitrator awarded RB Commercial $1,795,846.02 in attorneys' fees. JA1054. Petitioners claim the Arbitrator's fee award manifestly disregarded

---

[10] This is a well-founded fear, as the sole asset of Marine Club is in foreclosure and might be sold for a value less than the amount of the Senior Loan. Without the protection of section 13.2, in such a scenario, RB Commercial would be left out from any recovery.

Delaware law because RB Commercial's parent corporation fronted its attorneys' fees and because the fees were allegedly unreasonable. Appellants' Br. p. 27. The Arbitrator, the Appellate Arbitration Panel, and the district court have all roundly rejected these arguments. *See* JA1121, JA2284. This Court should do likewise.

An arbitrator's award of attorneys' fees is entitled to the same deference otherwise afforded to arbitrator's rulings. "A court must defer to the arbitrators' findings as to the appropriate amount of attorneys' fees." *Wells Fargo Advisors, LLC v. Watts*, 540 F. App'x 229, 231 (4th Cir. 2013) (reversing the vacatur of an arbitration award which did not state a basis for a fee award). That Petitioners find the amount unreasonable does not mean the Arbitrator's ruling can be overturned.

Once again, Petitioners cite no binding legal precedent that the Arbitrator refused to heed. The sole precedent that Petitioners identify is *Mahani v. Edix Media Gp., Inc.,* 935 A.2d 242, 245-46 (Del. 2007). But *Mahani* does not get Petitioners to vacatur. First, as RB Commercial previously argued, nothing in *Mahani* requires an arbitrator, rather than a court, to use its factors to adjudicate the reasonableness of the fee request. *See* JA2072. Petitioners ignore this concept and blithely state that "settled Delaware law" requires both "a court or arbitrator [to] consider the factors." Appellants' Br. p. 28. Second, even if the factors were applicable, there is no evidence that the Arbitrator refused to apply them. Petitioners and RB Commercial

both presented the factors to the Arbitrator in their fee briefing.[11] *See* JA1553; JA1544. Petitioners do not, and cannot, point to any facts, other than the amount of award, which they contend shows disregard of these factors. Appellants' Br. p. 29. And even the amount of the award weighs in favor of the Arbitrator considering the factors because the Arbitrator decreased the fees awarded to RB Commercial by almost $150,000 from the amount requested. JA1121.[12]

Nor is the lack of explicit analysis of the factors in the Final Award evidence that the Arbitrator disregarded them. "Arbitration panels are not required to explain their decisions." *MCI Constructors*, 610 F.3d at 858. Therefore, "a court must defer to arbitrators' factual findings on attorneys' fees even if the arbitrators do not explain a basis for the precise amount." *Wells Fargo Advisors, LLC v. Watts*, 540 F. App'x at 232. Petitioners cannot claim the Arbitrator manifestly disregarded the law when the sole precedent they cite is distinguishable, and nothing suggests that the Arbitrator ignored that precedent.

---

[11] Although RB Commercial never argued that these factors were binding on the arbitrator.

[12] Petitioners' brief also states that RB Commercial staffed the matter with over thirty attorneys. Appellants' Br. p. 29. Yet this neglects that RB Commercial only sought to recover fees incurred by less than one-third of this list. As RB Commercial told the arbitrator, it only sought to recover the fees incurred by individuals who billed more than $7,500 over the life of the matter. JA1567. Additionally, over three quarters of the fees were incurred by only a single partner, associate, and paralegal who were the primary individuals on the matter. JA1568.

Petitioners' other argument that the plain language of the Operating Agreement precluded the award of fees because RB Commercial's parent corporation first paid the fees is also unavailing. Petitioners have never cited any authority holding that payments by a parent corporation cannot be considered "out-of-pocket" by its wholly-owned subsidiary. As RB Commercial noted to the Appellate Arbitration Panel "[i]t is common in any industry that parent corporations pay certain expenses of their wholly owned subsidiaries and that does not preclude the subsidiary from recovering these expenses where they are otherwise recoverable." JA2040. This is particularly true because RB Commercial's parent corporation routinely pays RB Commercial's operating expenses. JA2040. Additionally, one reason arbitrators are afforded discretion in how they award fees is because they have observed the conduct of the parties.[13] In the arbitration, Petitioners often referred to RB Commercial and its parent corporation as a single entity. JA2040. Tellingly, Petitioners also requested attorneys' fees paid on their behalf by non-party Marine Club. JA2040. Petitioners' argument that RB Commercial cannot recover attorneys' fees paid by its parent ignores its own past litigation position.

---

[13] The Arbitrator held several motions for sanctions in abeyance during the course of the arbitration.

Finally, even assuming *arguendo* that Petitioners are right about whether RB Commercial was "entitled to" attorneys' fees because they were paid by its parent company, the Arbitrator still had authority to award fees under AAA Rule 49(a). That Rule allows an arbitrator to "grant any remedy or relief that the Arbitrator deems just and equitable and within the scope of the agreement of the parties." JA1380. This rule, along with the other AAA Rules, was expressly incorporated in the Operating Agreement. JA1249. Nothing in the Operating Agreement restricts the scope of the Arbitrator's award. While the Operating Agreement <u>requires</u> that prevailing parties must recover out-of-pocket expenses, it does not <u>forbid</u> an award of other expenses. Therefore, the Arbitrator did not disregard the plain meaning of the Operating Agreement in making her award.

### C.   <u>The Arbitrator's Conclusion that Full Recourse Events Had Occurred Was Not In Manifest Disregard of Delaware Law.</u>

Petitioners also challenge the Arbitrator's conclusion that multiple Full Recourse Events occurred. Petitioners believe the Arbitrator reached this conclusion, too, in manifest disregard of Delaware law. Appellants' Br. p. 30. The Arbitrator did no such thing. *See* JA1177-1179; JA1185-1187.

First, Petitioners again fail to identify any binding authority (not a single case) that would compel a contrary result on this issue. *See Warfield*, 26 F.4th at 670. Instead, they repeat their refrain that Delaware law requires terms to be construed according to their plain meaning. As discussed above, however, Petitioners agreed

that an arbitrator would interpret their agreement. So they cannot complain that the interpretation differs from the one they believe is required.

Second, even if this Court were to relitigate the merits of this issue, the Arbitrator's interpretation was completely reasonable. Petitioners claim that both of the Full Recourse Events decided by the Arbitrator were contrary to the plain meaning of section 13.2. They are wrong.

The first Full Recourse Event found by the Arbitrator, that Petitioners interfered with RB Commercial's attempts to control Marine Club following a Changeover Event, is addressed below in connection with Petitioners' claim that the Arbitrator erred in finding that four Changeover Events had occurred.[14]

The second Full Recourse Event challenged by Petitioners is that Mr. Blumenfeld violated section 13.2(iv) when he pledged his interest in Marine Club to secure a loan for $20,600,000.[15] *See* JA1996-1999. When Mr. Blumenfeld made this pledge, he cut out RB Commercial's signature page from an unrelated document and

---

[14] Section 13.2(iii) provides that a Full Recourse Event Occurs upon "(iii) Interference with Capital Member's exercise of its rights or remedies arising as a result of the occurrence of a Changeover Event; provided, however, nothing herein shall be construed to prohibit the Operating Member from filing a lawsuit or counterclaim for money damages, or any answer, in any such case to challenge the validity of the action taken or breach asserted in order to seek damages resulting therefrom." JA067.

[15] That section provides that a Full Recourse Event occurs upon "(iv) Breach of restrictions contained in this Agreement or the Senior Mortgage Loan Documents on (i) transfer of the Property or interests therein (other than by virtue of a Minor Lease), or (ii) transfer of interests (direct or indirect) in the Company." JA067.

attached it to the end of the document he presented to a lender, claiming that RB

Commercial consented to the transfer. JA1177-1178. Petitioners claim that this

pledge cannot qualify as a "transfer" under section 13.2(iv). JA1245.

First, Petitioners waived this argument by never presenting this alleged plain

meaning of "transfer" to the Arbitrator. *See United Food & Com. Workers, Loc.* 400

v. *Marval Poultry Co.*, 876 F.2d 346, 352 (4th Cir. 1989) (reversing the vacatur of

an award because the argument was not raised to the arbitrator). Instead, they

defended their conduct on other grounds they believed more likely to succeed,

including that they were unaware RB Commercial's signature page was forged.

JA1186. Second, the pledge is prohibited by section 3.2.[16] Section 3.2 defines

---

[16] Section 3.2 provides that:
    (a) Neither the Operating Member nor the Sponsor may make an assignment, transfer, or other disposition (voluntarily, involuntarily or by operation of law) (a "***Transfer***") of all or any portion of its Membership Interest, nor pledge, mortgage, hypothecate, grant a security interest in, or otherwise encumber (an "***Encumbrance***") all or any portion of its Membership Interest, <u>except with Requisite Consent if</u>:
        (i) Such Transfer reduces Sponsor's legal or equitable interest in Operating Member;
        (ii) Such Transfer or series of transfers of any legal or equitable interest in any entity or entities that results in a change of ultimate control of Operating Member;
        (iii) Such Transfer or series of transfers of any legal or equitable interest that results in any party that was not a Significant Owner before such transfer (or series of transfers) becoming a Significant Owner thereafter. For purposes of this provision, a "Significant Owner" is an individual or entity that owns, directly or indirectly, 25% or more of the equity interests in Operating Member;

Encumbrance to include Mr. Blumenfeld pledging his interest in Marine Club. JA038. It then categorically forbids both Encumbrances and Transfers but allows certain transactions with RB Commercial's consent.[17] JA038. Yet Petitioners believe that the only transactions prohibited by this section are those in the list following "except with Requisite Consent if:" Appellants' Br. p. 30-31. Interpreting this section as Petitioners do renders the Operating Agreement's definition of, and prohibition of, Encumbrances superfluous, as only "Transfer[s]" are mentioned in that list. *See* JA038. Delaware law requires that court interpret contracts to avoid "render[ing] a provision or term meaningless or illusory." JA716 (citing *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019)). Since the Arbitrator's interpretation accords with Delaware law against rending terms meaningless, it did not manifestly disregard the law.

---

> (iv) It is a Transfer of any interests in the Company by Operating Member.
> Any attempted Transfer of, or granting of an Encumbrance on, all or any portion of a Membership Interest, other than in strict accordance with this Section 3.2, shall be void…

JA038 (emphasis added).

[17] A restriction on Encumbrances is eminently reasonable in this situation. It prohibits a scenario where RB Commercial is forced to become co-owners of Marine Club with someone it has never met. Indeed, this scenario looks increasingly likely because the loan secured by Mr. Blumenfeld's pledge of his interest in Marine Club is in foreclosure. *See Divine Intervention Hotel, LP, et al. v. Finch Prop. Holdings I, LLC*, No. 656998/2022 (N.Y. Sup. Ct., County of N.Y. Oct. 31, 2022) (allowing the foreclosure sale of certain pledged assets to proceed).

**D.**    <u>The Arbitrator's Conclusion that Changeover Events Had Occurred Was Not In Manifest Disregard of Delaware Law.</u>

Petitioners next claim that the Arbitrator manifestly disregarded Delaware law by concluding that four separate Changeover Events, as defined in sections 8.1 and 8.2 of the Operating Agreement, occurred. Appellants' Br. p. 32; *see also* JA1172-1177, JA1183-1185. Petitioners argue that the Arbitrator reached all four conclusions in contravention of the Operating Agreement's plain terms.

Petitioners cite no binding precedent requiring a contrary result on this issue. Instead, as with almost every other claim of error, they repeat the argument that the Arbitrator's interpretation of the Operating Agreement was contrary to the plain meaning of its terms. Petitioners' claims about each of the four Changeover Events are addressed below, *seriatim*.

First, the Arbitrator concluded that the Senior Lender's claim of default and commencement of remedial action is a Changeover Event under section 8.1(f) of the Operating Agreement. JA1235.[18] Petitioners argue that the remedial action first occurred in April 2021 when the Senior Lender filed its foreclosure proceeding. Blatantly misstating the record, Petitioners even claim that this is something "[n]o party disputes." Appellants' Br. p. 33. But, as argued by RB Commercial in the

---

[18] That section provides that a Changeover Event occurs upon "(f) The claim by Senior Mortgage Lender of the occurrence of an Event of Default under the Senior Mortgage, together with Senior Mortgagee's commencement of remedial action as a result of such claimed default." JA057.

arbitration, the Senior Lender commenced remedial action on September 15, 2020, when it triggered a cash management event "due to an Event of Default" and altered the normal course of returning rents collected by Marine Club. *See* JA2132-2133. In fact, the Arbitrator explicitly noted the occurrence of this event in the Final Award. *See* JA1174. Triggering a cash trap gave the Senior Lender the right to retain funds collected by Marine Club, something that easily qualifies as a remedial action. *See* JA1174.

Second, the Arbitrator concluded that Petitioners' deposit of the Property's funds into accounts other than those that were contractually designated was the "intentional misapplication of any funds derived from the Property" and a Changeover Event under section 8.1(d)(ii).[19] JA1235. Petitioners claim that only violating a provision of the Operating Agreement can qualify as misapplication of funds. Appellants' Br. p. 34. However, this requirement, created by Petitioners, is nowhere in the Operating Agreement.

---

[19] That section of the Operating Agreement provides that a Changeover Event occurs upon "(d) [Mr. Blumenfeld's]: (i) commission of a criminal act involving either moral turpitude or financial irregularity, or its conviction of a felonious criminal act, (ii) intentional misapplication of any funds derived from the Property, including without limiting the generality of the foregoing, security deposits, insurance proceeds and condemnation awards, (iii) fraud, intentional misrepresentation to the Capital Member, or gross negligence in the management of the Property, or (iv) liquidation or dissolution." JA057.

Mr. Blumenfeld has never attempted to hide that he intentionally stopped deposited rents into the account designated in the Senior Loan Agreement. JA1175; *see also* JA2134; JA563. Doing so (likely to avoid the cash trap discussed above) can certainly constitute a misapplication of funds because it is the placement of funds in an account different than the one contractually required and opens Marine Club to a breach of contract claim. The Arbitrator's conclusion that this was a misapplication of funds did not violate the Operating Agreement's plain terms. *See Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31,* 933 F.2d 225, 230 (4th Cir. 1991) ("We do not and need not decide whether any of these analyses constitute the best or most accurate reading of the contract. We hold only that they are plausible readings of the agreement.... Consequently, ... we cannot say that the arbitration award failed to draw its essence from the agreement.").

Third, the Arbitrator concluded that a Changeover Event occurred under section 8.2 of the Operating Agreement when Petitioners failed to place tenants' security deposits in the statutorily required escrow accounts.[20] Appellants' Br. p. 34. Petitioners' argument against this conclusion misleads the Court by omitting several of the Arbitrator's findings and entire sections of the Operating Agreement. It was

---

[20] That section of the Operating Agreement provides that "For so long as the [Mr. Blumenfeld] is the Manager, the occurrence of any act in material violation by the Manager of, or material failure by the Manager under, this Agreement shall constitute a Changeover Event." JA058.

not, as Petitioners contend, a violation of a Pennsylvania statute which led to this Changeover Event; it was a violation of the Operating Agreement's requirement that Petitioners enforce agreements entered into by Marine Club. *See* JA1185. One such agreement, between Marine Club and the property manager, required the property manager to ensure security deposits were placed in escrow accounts if required by the relevant law. *See* JA1176. Pennsylvania law, which governed the security deposits, did require these escrow accounts. Rather than "us[ing] all commercially reasonable efforts to… enforce [this] agreement" as required by section 4.1 of the Operating Agreement, Petitioners did nothing.[21] *See* JA1175. Petitioners' inaction allowed the property manager to violate its contract with Marine Club with impunity. It was this violation of the Operating Agreement that created this Changeover Event, not a violation of a Pennsylvania statute. It is disingenuous for Petitioners to ignore

---

[21] That section of the Operating Agreement provides that "(d) The Manager shall discharge its duties in a commercially prudent manner as provided for in this Agreement. <u>The Manager, on behalf of the Company, shall in good faith use all commercially reasonable efforts to</u> implement all Major Decisions approved by the Capital Member, <u>enforce agreements entered into by the Company,</u> and conduct the ordinary business and affairs of the Company in accordance with good industry practice and this Agreement. The Manager shall not be required to devote a particular amount of time to the Company's business, but shall devote sufficient time to perform its duties hereunder. The Manager shall not delegate any of its rights or powers to manage and control the business and affairs of the Company to any person without the prior written consent of the Capital Member, except to a third party manager to undertake some or all the duties of the Manager, and any management fee due to the Manager may be paid to such third party manager by Manager." JA047 (emphasis added).

the Arbitrator's factual findings and whole sections of the Operating Agreement and then claim that the Arbitrator did not interpret the Operating Agreement according to its plain meaning.

Finally, the Arbitrator concluded that Petitioners' failure to make required monthly minimum distributions was a Changeover Event under Section 8.1(a).[22] JA1235. Petitioners contend that RB Commercial orally agreed to forbear from collecting these payments. This contention is directly contradicted both by the requirement in a Pre-Negotiation Agreement that the any agreement to forebear be in writing, and by the Arbitrator's factual finding that "[w]hen the pandemic was in its early stages, [RB Commercial] discussed with [Petitioners] the possibility of entering into a forbearance with respect to the Minimum Distributions." JA1173. Petitioners offered no rebuttal in the arbitration to the Pre-Negotiation Agreement's validity or enforceability, and the Arbitrator's conclusion that a Changeover Event had occurred did not violate the Operating Agreement's plain terms. *See* JA1191.

**E.    The Arbitrator's Rejection of Petitioners' Counterclaims Was Not In Manifest Disregard of the Law.**

Petitioners conclude their assault on the Arbitrator's decision by claiming that she manifestly disregarded the law when she found that Petitioners did not prove their counterclaims by a greater weight of the evidence. *See* JA1179-1181; JA1190-

---

[22] That section of the Operating Agreement provides that a Changeover Event occurs upon "(a) Failure to make a Minimum Distribution on the date due." JA057.

1192. The Arbitrator found that Petitioners "failed to establish, by the greater weight of the evidence" that any alleged breach caused Petitioners asserted damages. She specifically noted that Petitioners' claims of damage "are based on speculation." JA1192. She also concluded that the Pre-Negotiation Agreement released RB Commercial from the alleged breaches. JA1191-1192.

Petitioners first argue that the Arbitrator ignored the Pre-Negotiation Agreement's plain meaning when she enforced that agreement against Marine Club Manager, despite only Mr. Blumenfeld signing it. This argument has been waived as the "[t]he validity or enforceability of the release were not challenged by [Petitioners]" at the arbitration. JA1191. *See United Food & Com. Workers*, 876 F.2d at 352 (4th Cir. 1989) ("[A] party to arbitration cannot 'voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator.'" (quoting *International Chem. Workers Union v. Mobay Chem. Corp.*, 755 F.2d 1107, 1112 (4th Cir. 1985)). Even if the issues had been raised, Marine Club Manager is owned and controlled by Mr. Blumenfeld, and Mr. Blumenfeld cannot rely on corporate formalities that he has blatantly disregarded when doing so served his purpose. JA800.

Second, the Petitioners argue that RB Commercial's retention of the Minimum Distribution caused the Petitioners to default on the Senior Loan. The Arbitrator expressly disagreed. She concluded "[Petitioners] failed to establish, by

37

the greater weight of the evidence that [RB Commercial's] actions in January through March caused the Event of Default, when the cash management event was not triggered until September." JA1190. She also noted "[i]t was [Petitioners'] own conduct in making those [Minimum Distribution] payments to [RB Commercial] in the first place which initiated" the default. JA1190. Petitioners cannot challenge the Arbitrator's factual findings and cannot resort to their usual argument that the Arbitrator refused to interpret the Operating Agreement pursuant to its plain terms. This is a factual finding, which this Court cannot reverse, even under the manifest disregard standard.

Finally, Petitioners argue that the Arbitrator manifestly disregarded the law in concluding that Petitioners "did not establish 'a causal connection between [RB Commercial's] communication with the [Senior] loan servicer and the event of default.'"  Appellants' Br. p. 38. *See* JA1191-1192. Petitioners claim that the Operating Agreement does not require the disclosure of confidential information to "have caused an event of default to be actionable."  Appellants' Br. p. 38. This is correct; such a requirement is found in binding Delaware law not the Operating Agreement. *See* JA1470 (Petitioners citing the elements of breach of contract as including one for damages resulting from the breach). Petitioners never provided any evidence, and the Arbitrator could not credit any, for any damages they may have experienced by this alleged breach, other than the declaration of an event of

38

default. If Petitioners admit there was no causation link, they have no damages making the alleged breach actionable or material. The Arbitrator did not manifestly disregard binding Delaware case law in reaching her conclusion. To the contrary she was upholding it.

**F.**    Even If The Arbitrator Manifestly Disregarded The Law, That Is Not A Ground For Vacatur Under 9 U.S.C. § 10.

None of Petitioners' claims about manifest disregard warrant vacatur because manifest disregard should not be a permitted ground for vacatur under the Federal Arbitration Act.[23] The FAA provides that an award may be vacated upon certain enumerated grounds found in 9 U.S.C. § 10. These include an arbitrator's fraud, evident partiality, misconduct in refusing to hear evidence, and conduct exceeding her powers. *See* 9 U.S.C. § 10. The FAA requires that, unless one of these grounds is present, a court "must" confirm an arbitration award.[24] 9 U.S.C. § 9. Manifest disregard is not one of the enumerated grounds under section 10. Thus, section 9 of

---

[23] RB Commercial makes this argument to preserve it for en banc review or certiorari. RB Commercial appreciates that, at this stage, the Court cannot depart from its prior decision in *Wachovia Secs., LLC v. Brand*, 671 F.3d 472 (4th Cir. 2012). *See, e.g.*, *Manning v. Caldwell*, 930 F.3d 264, 271 (4th Cir. 2019) (en banc) (suggesting that parties need to present an argument to the panel to preserve it for later en banc determination).

[24] This section also allows modification of an arbitration award in compliance with 9 U.S.C. § 11. That said, none of these grounds is relevant here, as Petitioners have requested vacatur rather than the modification of the arbitrator's award.

the FAA requires the Court to confirm the award even if the arbitrator manifestly disregarded the law.

Despite the FAA's requirement that an award be confirmed if none of the enumerated grounds exist, *Wachovia Sec.* held that manifest disregard continues to exist as a ground for vacatur "as either an independent ground for review or as a judicial gloss." *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012). That determination conflicts with the Supreme Court's holding that the grounds for vacatur found in 9 U.S.C. § 10 are the "exclusive grounds" for vacating an arbitration award under the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.").

As other Courts of Appeals have correctly determined, the Supreme Court's holding in *Hall Street Associates* abrogated cases allowing awards to be vacated on non-statutory grounds, like manifest disregard. *See, e.g.*, *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009) ("To the extent that manifest disregard of the law constitutes a non-statutory ground for vacatur, it is no longer a basis for vacating awards under the FAA." (cleaned up)); *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011) ("'[M]anifest disregard of the law" is not a ground on which a court may reject an arbitrator's award under the

Federal Arbitration Act."); *Med. Shoppe Int'l v. Turner Inv., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) ("We have previously recognized the holding in *Hall Street* and similarly hold now that an arbitral award may be vacated only for the reasons enumerated in the FAA."); *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010) ("We hold that our judicially-created bases for vacatur are no longer valid in light of *Hall Street*."). *But see Johnson v. Wells Fargo Home Mortgage, Inc.,* 635 F.3d 401, 415 n. 11 (9th Cir. 2011) (recognizing the continued vitality of manifest disregard).

Contrary to the holding in *Hall Street Associates*, the court in *Wachovia Sec.* determined that manifest disregard survived as a basis for vacating arbitration awards under the FAA. *Wachovia Sec.*, 671 F.3d at 480. That decision is incorrect. If this Court determines that the Arbitrator manifestly disregarded the law, it should reverse *Wachovia Sec.* and hold, as the Fifth, Seventh, Eighth, and Eleventh Circuits have, that manifest disregard is not a ground for vacating arbitration awards under the FAA. [25]

---

[25] The Court has previously declined a request to revisit *Wachovia Sec.'s* holding. In *Warfield*, the Court stated, "even if we could overrule *Wachovia Securities*, we would not be inclined to do so." 26 F.4th at 670 n. 3. But in that case that Court acknowledged "the existence or nonexistence of the manifest disregard doctrine does not change the outcome here, *i.e.,* upholding the arbitration award." *Id.* Therefore, if the continued vitality of *Wachovia Sec.* would change the outcome here, i.*e.*, because the Court finds the arbitrator manifestly disregarded the law, it would be worth the confusion feared by *Warfield* to ensure the arbitration award in RB Commercial's favor is not improperly vacated under the FAA based on a non-statutory ground. *Cf.*

## IV.   Petitioners Appeal is Frivolous and RB Commercial Should Be Awarded Its Attorneys' Fees For Defending Against It.

Both the Federal Rules of Appellate Procedure and federal statutes allow an award of attorneys' fees for defending against frivolous appeals which vexatiously increase the cost of litigation. *See* Fed. R. App. P. 39; 28 U.S.C. § 1912; 28 U.S.C. § 1927. "[C]hallenges to commercial arbitral awards bear a high risk of sanctions." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1028 (7th Cir. 2013). This is because allowing parties to "freely relitigate their cases in court" will undermine arbitration's purpose. *DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1346 (10th Cir. 2009). This is exactly what Petitioners have done here.

Courts routinely sanction those who oppose the confirmation of an arbitration award without merit. *See e.g., Lynch v. Whitney*, 419 F. App'x 826, 839 (10th Cir. 2011) ("Appellants and their counsel have stubbornly refused to honor the Panel's decision, even though they have no realistic basis for overturning it."); *DMA Int'l, Inc.*, 585 F.3d at 1346 ("[O]nly by imposing sanctions in cases like this can we give breath to the 'national policy favoring arbitration.'"); *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 880 F.3d 335, 336 (7th Cir. 2018) (collecting cases for the proposition that "commercial parties that wage unsuccessful litigation against

---

*Constellium Rolled Prod. Ravenswood*, 18 F.4th at 741("[W]e have questioned that precedent [dealing with manifest disregard] in light of more recent decisions from the Supreme Court.").

42

an arbitrator's award must make their adversaries whole"); *Rostad & Rostad Corp. v. Inv. Mgmt. & Rsch., Inc.*, 923 F.2d 694, 697 (9th Cir. 1991) (granting sanctions because "[Appellant] has failed to understand the very limited review now available in federal court. It has presented meritless opposition"). *See also B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006) ("When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken").

The Second Circuit in *Enmon v. Prospect Cap. Corp.*, even specifically rejected the same type of gambit employed by Petitioners. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 145 (2d Cir. 2012). In that case, the appellant attempted to argue that an arbitrator's calling witnesses out of order warranted vacatur. *Id.* But the court noted that the arbitrator did this only at the appellant's request. *Id.* Calling this a "gross mischaracterization of the arbitral proceedings" the court affirmed sanctions against the appellant. *Id.*

Here, too, Petitioners have grossly misstated the arbitral record. For example, they claim that the Arbitrator erred by deciding a new issue raised by RB Commercial after the hearing. But the record clearly shows that RB Commercial did not raise the issue—Petitioners did. This Court and RB Commercial should not have

to waste resources correcting these basic errors or incur attorneys' fees to fight Petitioners' claim that the misstated record warrants vacatur.

There is also considerable evidence that Petitioners have pursued this appeal in bad faith. Their core theory assumes that three esteemed jurists all manifestly disregarded the law governing on five distinct issues underpinning the Final Award. And, according to Petitioners, the district court simply rubber stamped their disregard for the law. But even beyond this absurd argument, Petitioners' conduct in the confirmation proceedings reveals their true purpose: delay so that Marine Club could be looted. Under the arbitration award, RB Commercial has a right to control Marine Club. But despite not paying RB Commercial or the Senior Lender for almost three years, and having collected rents that entire time, Marine Club's bank accounts, which are currently controlled by Petitioners, are near zero. While this case was pending in the district court, Petitioners transferred 97% of the funds from Marine Club's account, almost $2,000,000, into accounts not owned by Marine Club. JA1597. During this appeal, the rents collected by Petitioners from Marine Club's sole asset, are not being deposited into Marine Club's account. JA2327. Petitioners are not appealing because they believe they can prevail, they are appealing to postpone any reckoning for their actions, and to force RB Commercial to expend additional attorneys' fees enforcing a 15-month-old arbitration award.

The Court should not condone Petitioners' frivolous arguments, which require the Court to ignore Fourth Circuit and Supreme Court precedent. It also should not condone weaponizing these arguments in bad-faith to gain time so Petitioners can strip Marine Club of its assets before finally handing over control of a worthless entity. RB Commercial respectfully requests that the Court grant it leave to file a motion detailing the fees incurred defending against Petitioners' frivolous litigation, so that the Court can award these fees.

## V.     Oral Argument is Not Needed in This Case.

As discussed above, Petitioners' arguments for vacating the Final Award are frivolous; therefore no oral argument is necessary pursuant to Federal Rule of Appellate Procedure 34(a)(2)(A).

<u>**CONCLUSION**</u>

Petitioners "chose arbitration, and [they] must now live with that choice." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013). Petitioners cannot show anything done by the Arbitrator which meets the sky-high standard for vacating an arbitration award. Therefore, this Court should affirm the district court's August 2, 2023 judgment, which confirmed the arbitration award entered in this matter. This Court should also award RB Commercial its attorneys' fees in defending against this frivolous appeal.

Respectfully submitted,

Dated: October 23, 2023

*/s/ Gerald J. Stubenhofer, Jr.*

Gerald J. Stubenhofer, Jr.
Cameron J. Comer
MCGUIREWOODS, LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, Pennsylvania 15222
Telephone: 412 667 6000
Facsimile: 412 667 6050
gstubenhofer@mcguirewoods.com
ccomer@mcguirewoods.com

*Counsel for Respondent-Appellee RB
Commercial Mortgage, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 12,290 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced, 14-point Times New Roman font using Microsoft Word.

<u>*/s/ Gerald J. Stubenhofer, Jr.*</u>
Gerald J. Stubenhofer, Jr.

*Counsel for Respondent-Appellee*
*RB Commercial Mortgage, LLC*

Dated: October 23, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2023, the foregoing Brief of Respondent-Appellee was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system and was served by electronic mail on the following persons at the addresses below.

Neil A. Riemann
PARRY LAW PLLC
100 Europa Center Drive, Suite 351
Chapel Hill, NC 27517
nar@parrryfirm.com

Benjamin A. Garber
Melissa A. Anderson
BRAVERMAN KASKEY GARBER P.C.
One Liberty Place
1650 Market Street, 56th Floor
Philadelphia, PA 19103
bgarber@bravermanlaw.com
anderson@bravermanlaw.com

*Counsel for Petitioners-Appellants*

*/s/ Gerald J. Stubenhofer, Jr.*
Gerald J. Stubenhofer, Jr.
*Counsel for Respondent-Appellee RB*
*Commercial Mortgage, LLC*