No. 23-1841

# In the
# United States Court of Appeals
## for the Fourth Circuit

———————————

**MARINE CLUB MANAGER, INC., EBRM RESURRECTION LLC, and ERIC BLUMENFELD,**

*Petitioners-Appellants*

v.

**RB COMMERCIAL MORTGAGE, LLC,**

*Respondent-Appellee*

**On Appeal from the United States District Court
for the Western District of North Carolina at Asheville**

———————————

**REPLY BRIEF OF PETITIONERS-APPELLANTS**

———————————

| | |
|---|---|
| Neil A. Riemann | Benjamin A. Garber |
| PARRY LAW PLLC | Melissa A. Anderson |
| 100 Europa Center Drive, Suite 351 | BRAVERMAN KASKEY GARBER P.C. |
| Chapel Hill, NC 27517 | One Liberty Place |
| (919) 913-3316 | 1650 Market Street, 56th Floor |
| nar@parryfirm.com | Philadelphia, PA 19103 |
| | (215) 575-3800 |
| | bgarber@braverlaw.com |
| | anderson@braverelaw.com |

*Counsel for Petitioners-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………….………..i

TABLE OF AUTHORITIES……………………….....………………………….....ii

INTRODUCTION……………………………………………………………………1

ARGUMENT………………………………………………………………….…...3

I.   This Court Should Reverse The District Court's Confirmation Of The Award And Vacate It Because The Arbitrator Manifestly Disregarded The Plain And Unambiguous Language Of The Operating Agreement In Rendering That Award Such That The Award Fails To Draw Its Essence From The Operating Agreement……………………………………………….3

II.  In The Alternative, The Court Must Reverse The District Court's Confirmation Of The Award And Vacate It Because The Arbitrator Concluded That Full Recourse And Changeover Events Have Occurred In Manifest Disregard Of Governing Delaware Law……………………………11

III. The Court Must Dismiss Appellee's Request For Attorneys Fees As Premature And Baseless…………………………………….....………….12

CONCLUSION………………………………………………………………...14

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)……………..…16

# TABLE OF AUTHORITIES

**CASES**

*Apex Plumbing Supply, Inc. v. U.S. Supply Co.*,
    142 F.3d 188 (4th Cir. 1998)……………..………………………………...……11

*Baltimore Regional Joint Bd. v. Webster Clothes*,
    596 F.2d 95 (4th Cir. 1979)……………………………………………....…….10

*Champion Int'l Corp. v. United Paperworkers Int'l Union, Local 507*,
    168 F.3d 725 (4th Cir. 1998)…………………………………………..………10

*Constellium Rolled Products v. United Steel*,
    18 F.4d 736 (4th Cir. 2021)………………………………………………….7, 8

*Frye v. Wild Bird Centers*,
    714 F. App'x 211 (4th Cir. 2017)………………………...………………….6, 7

*Harvey v. CNN, Inc.*,
    48 F.4th 257 (4th Cir. 2022)…………………………………………………..14

*Island Creek Coal Co. v. District 28, United Mine Workers*,
    29 F.3d 126 (4th Cir. 1994)……………………………..………………………10

*Lorillard Tobacco v. Am. Legacy Found.*,
    903 A.2d 728 (Del. 2006)………………..…………………………………….4

*Marrow v. Roanoke Elec. Mbrshp. Corp.*,
    224 F. App'x 241 (4th Cir. 2007)……………………………………………..14

*MCI Constructors LLC v. City of Greensboro*,
    610 F.3d 849 (4th Cir. 2010)…………...…………………………………….6, 7

*Mo. River Serv., Inc. v. Omaha Tribe of Neb.*,
    267 F.3d 848 (8th Cir. 2001)…………………………………………………11

*Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*,
    76 F.3d 606 (4th Cir. 1996)…………………………………………...………10

*Patten v. Signator Ins. Agency, Inc.*,
    441 F.3d 230 (4th Cir. 2006)……………………………………………….4, 5, 10

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987)……………………………..…………………………………4

*United States Postal Serv. v. American Postal Workers Union*,
    204 F.3d 523 (4th Cir. 1999)…………………………………..………….10, 11

*Wells Fargo v. Marine Club Associates, LLC*,
    No. 210400745 (C.C.P. Phila.)……………………………………………………8

**RULES**

Fed. R. App. P. 38……………………………………………………………………...13

## INTRODUCTION

Appellants argued in their opening brief that the Award was issued with manifest disregard of the law of Delaware and failed to draw its essence from the Operating Agreement because, *inter alia*, Appellant Mr. Blumenfeld is permitted under the plain and unambiguous language of both the Operating Agreement and the Recognition Agreement to redeem Appellee RB's preferred equity interest pursuant to section 13.2 of the Operating Agreement. In that argument, Appellants detailed how the arbitrator modified and amended certain provisions of the Operating Agreement, such that the Award failed to draw its essence from the Operating Agreement, citing this Court's precedent.

In opposition, however, RB fails to address the common law grounds for vacating an arbitration award where the award does not draw its essence from the applicable contract, and instead, relies on patently absurd misconstructions of the Operating Agreement. The cases cited by Appellee are unavailing to the instant award because in those cases, the arbitrators—at best—misapplied the relevant law to the legal issues, whereas here, the arbitrator modified and altered the plain and unambiguous terms of the Operating Agreement in such a way that the award did not draw its essence from the Operating Agreement. Those are precisely the sort of circumstances in which this Court has vacated or affirmed the vacation of an arbitration award as issued in manifest disregard for the applicable law. The most

1

glaring example of the arbitrator's misconduct is her modification of section 13.2 of the Operating Agreement in which she changed the plain and clear requirement that any redemption of RB's preferred equity investment by Mr. Blumenfeld as Sponsor is subordinated to any <u>claim</u> the Senior Lender has against <u>Mr. Blumenfeld</u>. Rather than abide by the plain language of the Operating Agreement, however, the arbitrator concluded that a foreclosure action as to the Senior Loan by the Senior Lender against the realty owned by the <u>Company</u> also subordinates Mr. Blumenfeld's ability to redeem RB. The arbitrator's conclusion is a complete fabrication of section 13.2.

Although whether Mr. Blumenfeld can now redeem RB pursuant to section 13.2 of the Operating Agreement is dispositive to this appeal as he has already tendered the Required Redemption Amount utilizing non-Property Proceeds that are not subject to the waterfall provision in section 7.2, the arbitrator also manifestly disregarded the plain and unambiguous language of the Operating Agreement as to Full Recourse and Changeover Events. For example, the arbitrator concluded that a pledge of Mr. Blumenfeld's equity interest in the Company constituted a "Transfer" as that term is defined in the Operating Agreement such that a Full Recourse Event has occurred. But the Operating Agreement explicitly <u>excludes</u> a "pledge" as a "Transfer" in the Operating Agreement. Had the parties intended for a pledge to be a Transfer, they would have included that as part of the Operating Agreement's

2

definition of a Transfer.

Finally, RB now argues that the instant appeal is frivolous and merely a delay tactic such that it should be entitled to recover its fees expended in the instant appeal. Of course, the appeal is not frivolous for the reasons argued by Appellants in their opening and this reply brief. Procedurally, however, any request for fees must be made by separate motion after the disposition of the appeal, and substantively, RB has failed to demonstrate either bad faith or a malicious motive by Appellants.

For the reasons discussed herein and in Appellants' opening brief, the Court should reverse the district court's confirmation of the award, vacate it in its entirety, and deny RB's request for fees.

## ARGUMENT

**I. This Court Should Reverse The District Court's Confirmation Of The Award And Vacate It Because The Arbitrator Manifestly Disregarded The Plain And Unambiguous Language Of The Operating Agreement In Rendering That Award Such That The Award Fails To Draw Its Essence From The Operating Agreement.**

RB incorrectly argues that Appellants have failed to cite binding precedent that the arbitrator manifestly disregarded in rendering the arbitration award as to whether Mr. Blumenfeld can effect a redemption of RB pursuant to section 13.2 of the

3

Operating Agreement while the Senior Loan is in foreclosure.¹² Appellants cited binding precedent from the Supreme Court of Delaware, which requires the arbitrator to "accept and apply the plain meaning of an unambiguous term in the context of the contract language and circumstances." *Lorillard Tobacco v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006). This universal principle of law is, in fact, considered by the courts in determining whether an arbitration award was issued in manifest disregard of the law and derives its essence from the applicable agreement. Specifically, this Court has recognized, in reversing a district court's denial of a motion to vacate that:

> Although our standard of review of an arbitration award is properly a limited and deferential one, it does not require that we affirm an award that contravenes the plain and unambiguous terms of the governing arbitration agreement.

*Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (holding that the arbitration award failed to draw its essence from the governing arbitration agreement and was made in manifest disregard of the law) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

The Court's holding in *Patten* is instructive. There, the Court on appeal held

---

¹ As previously argued, the Company is meritoriously defending against the foreclosure proceedings in the Court of Common Pleas of Philadelphia.
² RB also argues that Appellants raised this issue before the arbitrator. In fact, as Appellants explained in their opening brief, RB raised this issue for the first time after the issuance of the Partial Award when it refused to accept Mr. Blumenfeld's tender of the Required Redemption Amount.

4

that the district court failed as a matter of law in refusing to vacate an arbitration award because the award was rendered with manifest disregard to the applicable state law and also failed to draw its essence from the agreement at issue when the arbitrator implied a one-year statute of limitations into the agreement, despite the agreement not including a statute of limitations. Such malfeasance by the arbitrator "disregarded the plain and unambiguous language of the governing arbitration agreement." *Id.* "Put succinctly, the arbitrator appears to have revised the governing arbitration agreement on the basis of his own 'personal notions of right and wrong,' and imposed a limitations period on the parties that they had specifically rejected." *Id.*

As the Court noted, although the scope of a court's review of an arbitration award is narrow, when an arbitrator acts in such a manner:

> [the] dispute does not fall into the category of awards based on "misapplication of principles of contractual interpretation [or] erroneous interpretation," which are not to be disturbed by judicial review. Rather, the arbitrator in this instance simply "amended or altered the agreement," and thus he "acted without authority." The arbitrator's ruling thus resulted in an award that, in the language of *Apex Plumbing*, simply was "not rationally inferable from the contract."

*Id.* at 236–37 (internal citations omitted).

The same can be said here. Section 13.2 provides, clearly and unambiguously, in pertinent part:

> [T]he Sponsor shall become fully liable for the repayment of the Required Redemption Amount (and the Capital Member's [Appellee

5

> RB] Investment shall thereupon be redeemed) upon the occurrence of any of the following:
>
> [occurrences omitted]
>
> . . .
>
> Notwithstanding the forgoing, for so long as the Sponsor is a guarantor under the Senior Mortgage Loan Documents, any indebtedness of Sponsor to Capital Member resulting under Section 13, either now or hereafter existing . . . shall be, and such indebtedness is, subordinated to any claim of the Senior Lender against Sponsor under the Senior Mortgage Loan Documents.

Put another way, under this section, Mr. Blumenfeld can redeem RB—and in fact—RB "shall" be redeemed—upon a Full Recourse Event, and Mr. Blumenfeld may pay the Required Redemption Amount so long as the Senior Lender has no claim against Mr. Blumenfeld individually—not the Company. The arbitrator thus modified section 13.2 when she concluded that a foreclosure action the Senior Lender has asserted against the Company—which is an action *in rem* and by definition solely against the real property—is, in fact, a claim against Mr. Blumenfeld as an individual.

In its opposition brief, RB argues that the term "claim" could encompass something more than a lawsuit. That, however, is not the dispositive issue here. The issue is against whom the claim is lodged—Mr. Blumenfeld or the Company. At no point has the Senior Lender made any sort of claim (lawsuit or otherwise) against Mr. Blumenfeld. Thus, the arbitrator's conclusion that a foreclosure action by the Senior Lender against the real property owned by the Company is the same thing as a

6

claim by the Senior Lender against Mr. Blumenfeld is a new (and illogical) term that the arbitrator added to section 13.2.

Notably, RB cites not a single case in support of its argument. The cases cited by RB, *Frye v. Wild Bird Centers*, 714 F. App'x 211 (4th Cir. 2017), *MCI Constructors LLC v. City of Greensboro*, 610 F.3d 849 (4th Cir. 2010), and *Constellium Rolled Products v. United Steel*, 18 F.4d 736 (4th Cir. 2021), all involve circumstances in which the arbitrator arguably misinterpreted the law as it relates to a contract provision—not, as here, injected a new term into the contract.

In *Frye*, this Court concluded that the arbitrator considered whether a non-compete provision applied to the dispute between the parties, and concluded that it did not, noting that the provisions of the contract were ambiguous and could support the arbitrator's conclusion. Unlike in *Frye*, section 13.2 is not ambiguous; in fact, it quite plainly provides that only a claim against Mr. Blumenfeld could preclude his redemption of RB so long as the Senior Lender had a claim—any claim—against Mr. Blumenfeld. The arbitrator, however, made no finding that the Senior Lender had a claim against Mr. Blumenfeld, and there is no evidence of record that it does. The only evidence of record is that the Senior Lender is pursuing a foreclosure action against the real property owned by the Company.

In *MCI*, the Court concluded that the damages assessed by the arbitrator could support the award. The issue in *MCI*, however, was the *calculation of damages*.

7

Appellants—for the purposes of this issue on appeal—do not dispute the calculation of damages. To the contrary, Appellants accepted the arbitrator's calculation and sought to pay that amount to redeem RB. The difference between the facts in *MCI* and this appeal is that the arbitrator here added new terms into section 13.2.

In *Constellium*, the arbitrator considered whether res judicata and collateral estoppel would preclude the arbitration respondent's claim. There, the Court concluded that the arbitrator evaluated the elements for each, and determined that neither applies. Again, the issue there was the misapplication of the law to the facts of the case—not a wholesale fabrication of new terms to the Operating Agreement.

Unlike in the cases cited by RB, nowhere in the Operating Agreement does it provide that RB cannot be redeemed after a Full Recourse Event pursuant to section 13.2 *if the Senior Loan is (allegedly) in default*. Rather, the only limitation is when the Senior Lender has a claim against Mr. Blumenfeld, who is the person who becomes liable for the payment of the Required Redemption Amount after a Full Recourse Event. As Appellants outlined previously, the only evidence in the record is that the Senior Lender has a foreclosure action proceeding against the Company only as to the realty and fixtures of the Property. *See Wells Fargo v. Marine Club Associates, LLC*, No. 210400745 (C.C.P. Phila.). The Senior Lender has made no claim against Mr. Blumenfeld as guarantor of the Senior Loan in that proceeding or otherwise.

8

The arbitrator additionally altered the Operating Agreement by concluding that Mr. Blumenfeld could not redeem RB because the provisions of section 12.2 of the Operating Agreement, which apply to the Company's—not Mr. Blumenfeld's—voluntary redemption of RB's preferred equity investment, must comport with the waterfall provisions of section 7.2. By making this determination, the arbitrator altered the plain and unambiguous language of section 13.2 of the Operating Agreement.

As Appellants explained in their opening brief, section 7.2, otherwise known as the "waterfall" provision governing distribution priority of Company funds, only applies to "Property Proceeds" distributed from the "Company." Money distributed from third parties utilizing non-Property Proceeds, such as from Mr. Blumenfeld as Sponsor, may be distributed beyond the scope of the waterfall contained in section 7.2. Section 13.2 makes no reference to either sections 7.2 or 12.2, and importing those sections—which are explicitly limited to the Company's redemption of RB utilizing Property Proceeds—into the award demonstrates that the arbitrator failed to draw the essence of the award from the Operating Agreement. In fact, the Operating Agreement's provision regarding a Full Recourse Event and redemption thereunder limits itself to section 13 by clearly and unambiguously referencing only section 13. *See* Operating Agreement, § 13.2 ("any indebtedness of Sponsor to Capital Member resulting under this Section 13").

9

RB also fails to address whether the arbitrator's award drew its essence from the Operating Agreement, a common law ground for vacating an arbitration award that this Court has previously utilized, both in affirming a district court's vacation of an arbitration award and reversing a district court's refusal to vacate. *See*, *e.g.*, *Patten*, 441 F.3d 230; *United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523 (4th Cir. 1999) (affirming district court's vacation of arbitration award as failing to draw its essence from the agreement and ignoring the plain and unambiguous language of that agreement); *Champion Int'l Corp. v. United Paperworkers Int'l Union, Local 507*, 168 F.3d 725 (4th Cir. 1998) (vacating district court's affirmation of arbitration award); *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 76 F.3d 606 (4th Cir. 1996) (affirming district court's vacation of arbitration award); *Island Creek Coal Co. v. District 28, United Mine Workers*, 29 F.3d 126 (4th Cir. 1994) (same); *Baltimore Regional Joint Bd. v. Webster Clothes*, 596 F.2d 95 (4th Cir. 1979) (same). At no point does RB address this ground for vacatur. In each of these cases, the Court concluded, generally in the context of manifest disregard of the governing law, that the arbitrator's award must be vacated because it modified, altered, or amended the terms of the operative contract.

Like the aforementioned cases, the arbitrator here injected new terms into the Operating Agreement despite clear and unambiguous contract provisions that plainly

10

provide that Mr. Blumenfeld can redeem RB by paying the Required Redemption Amount utilizing non-Property Proceeds.

"[A]lthough the authority of an arbitrator is broad, and subject to great deference under the applicable standard of review, 'it is not unlimited.'" *Patten,* 441 F.3d 230 (quoting *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001). "The requirement that the award 'draw its essence' from the parties' agreement means that 'the arbitrator may not ignore the plain language of the contract.' When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job." *United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523 (4th Cir. 1999). Pursuant to this Court's binding precedent, the arbitrator's conclusion that Mr. Blumenfeld cannot redeem RB pursuant to section 13.2 utilizing non-Property Proceeds while the Senior Lender has no claim against him is not "rationally inferable from the contract." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998).[3]

**II.  In The Alternative, The Court Must Reverse The District Court's Confirmation Of The Award And Vacate It Because The Arbitrator Concluded That Full Recourse And Changeover Events Have Occurred In Manifest Disregard Of Governing Delaware Law.**

In Appellants' opening brief, Appellants identified each and every circumstance in which the arbitrator modified or altered the terms of the Operating

---

[3] "While the "essence of the agreement" standard was first articulated by courts reviewing labor arbitration awards, the courts have generally acknowledged that it applies to other arbitration proceedings as well." *Patten*, 441 F.3d 230, n.5.

11

Agreement in concluding that Full Recourse or Changeover Events have occurred. Appellee's argument in opposition is that Appellants did not identify binding precedent that the arbitrator disregarded in rendering the award. As previously discussed *supra*, however, the binding Delaware precedent is the requirement that plain and unambiguous contract terms be applied as written, which is akin to the standard that this Court applies in reviewing an arbitration award for manifest disregard of the law. Appellants explained how the arbitrator failed to apply the plain and unambiguous law of the Operating Agreement in rendering her award, such as concluding that a "pledge" is a "Transfer" despite being explicitly defined in the Operating Agreement as <u>not</u> a "Transfer" and concluding that the Company must maintain a security deposit bond despite there being no such requirement in the Operating Agreement—clear examples of the arbitrator implying her own term into the Operating Agreement. *See*, *e.g.*, *Patten*, 441 F.3d at 235 (vacating arbitration award where arbitrator implied unexpressed term into agreement).

In reply, Appellants need not rehash their arguments made in the opening brief and stand on their arguments previously made. The arbitrator ignored the terms negotiated by the parties in drafting the Operating Agreement, and instead modified them based upon her own notions of right and wrong.

**III.   The Court Must Dismiss Appellee's Request For Attorneys Fees As Premature And Baseless.**

In the opposition, RB outrageously requests that it be awarded attorneys fees

12

on appeal, describing the appeal as "frivolous" and merely a tactic of delay. RB cites not one precedential case from this circuit that would authorize such fees, and even fails to identify the specific authority under which it seeks to recover fees. Regardless, however, Appellee's request for fees is patently premature. Any such request must be made by separate motion. *See* Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, <u>after a separately filed motion</u> or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." (emphasis added)).

As to Appellee's argument that this appeal was brought to delay resolution of the arbitration proceedings and award, the opposite is true. Appellants have brought this appeal to conclude the arbitration proceedings between the parties. The arbitrator issued an award fixing the Required Redemption Amount, which, after being paid, extinguishes Appellee's position within the Company and concludes the proceedings and dispute between the parties. After the arbitration proceedings, however, RB refused to accept the arbitrator's monetary award, necessitating this appeal. In contrast to RB's argument, this appeal seeks to bring finality to the arbitration. Appellants would have had no need to involve the federal courts in the underlying litigation or this appeal had RB simply abided by the arbitrator's initial monetary award.

Appellants have expeditiously prosecuted this appeal, having filed their

13

opening brief and joint appendix a month and a half after they filed their notice of appeal. More fundamentally, it is RB who has caused the continual delay of the district court proceedings and this appeal. Within weeks of receiving the arbitration award, Appellants tendered—in August 2022—the amount of the judgment to RB. It was RB who decided to raise an irrational, absurd misconstruction of the Operating Agreement and refused to accept the tender after the partial award was rendered so that it could continue to benefit from the 19.5% default interest accruing on the judgment.

Furthermore, under the precedent of this Court, RB would need to prove bad faith and a malicious motive for bringing the instant appeal. *See*, *e.g.*, *Harvey v. CNN, Inc.*, 48 F.4th 257 (4th Cir. 2022) ("Inherent . . . is an element of bad faith.") (holding that district court erred in sanctioning party "because the conduct the court cited as grounds for the award does not demonstrate bad faith"); *Marrow v. Roanoke Elec. Mbrshp. Corp.*, 224 Fed. Appx. 241 (4th Cir. 2007) ("We deny Appellees' motion for sanctions under Fed. R. App. P. 38 because we cannot conclude Marrow pursued this litigation for malicious purposes"). Appellee has done neither.

## CONCLUSION

Against the foregoing, Appellants respectfully request that the Court reverse the district court's judgment of August 2, 2023, remand with directions to vacate the Award

14

in its entirety, and deny Appellee's request for attorneys fees.

                                              Respectfully submitted,

                                              **BRAVERMAN KASKEY GARBER P.C.**

Dated: November 13, 2023        */s/ Benjamin A. Garber*
                                              BENJAMIN A. GARBER,
                                              MELISSA A. ANDERSON
                                              One Liberty Place, 56th Floor
                                              1650 Market Street
                                              Philadelphia, Pennsylvania 19103

                                              Neil A. Riemann
                                              PARRY LAW PLLC
                                              100 Europa Center Drive, Suite 351
                                              Chapel Hill, NC 27517

                                              *Counsel for Appellants*

## **CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)**

This Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4003 words. This Reply Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief is prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font, a Roman typeface.

*/s/ Benjamin A. Garber*
Benjamin A. Garber